Gayle M. Blatt, SBN 122048
*gmb@cglaw.com*
Jeremy Robinson, SBN 188325
*jrobinson@cglaw.com*
P. Camille Guerra, SBN 326546
*camille@cglaw.com*
**CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232

*Settlement Class Counsel*
[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| NOREEN PFEIFFER, *et al*., on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br>    vs.<br><br>RADNET, INC., a Delaware corporation,<br><br>        Defendants. | Case No.: 2:20-cv-09553 (RGK)(SK)<br>Consolidated with<br>2:20-cv-10180 (RGK) (SK)<br>2:20-cv-10328 (RGK) (SK)<br><br>Judge:    Hon. R. Gary Klausner<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES AWARD, EXPENSE REIMBURSEMENT, AND SERVICE AWARDS TO REPRESENTATIVE PLAINTIFFS**<br><br>Date:    February 7, 2022<br>Time:    9:00 a.m.<br>Crtrm:    850, 8th Floor<br>[Filed Concurrently with Declarations and Proposed Order] |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................... 1

II.    FACTUAL AND PROCEDURAL HISTORY ......................................... 3

    A.     Formal and Informal Discovery Leading to Mediation ....................... 4

    B.     Settlement Negotiations .................................................................... 5

III.   Terms of the Settlement Agreement ..................................................... 5

    C.     Monetary, Injunctive and Other Settlement Benefits ......................... 5

        1.    Monetary Relief ............................................................................. 5

        2.    Injunctive Relief ............................................................................ 7

        3.    Notice to Class and Administrative Costs ....................................... 8

        4.    Proposed Class Representative Service Awards ............................... 8

        5.    Attorneys' Fees, Costs and Expenses ............................................. 8

IV.    ARGUMENT ......................................................................................... 8

    A.     The Requested Award is Fair and Reasonable by Ninth Circuit Standards ...................................................................................... 8

    B.     The Award Request is Supported by the Percentage-of-Recovery Method ...................................................................................... 10

        1.    The Results Achieved Here ........................................................... 11

        2.    The Risks and Nature of the Litigation ......................................... 12

        3.    The Skill Required to Prosecute this Action Effectively ................. 14

        4.    Awards in Similar Cases ............................................................... 15

    C.     The Fee Request Is Reasonable Under the Lodestar Cross-Check ..... 15

    D.     Class Counsel's Reasonable Expenses Should Be Reimbursed .......... 18

    E.     Request for Plaintiff Service Awards ............................................... 19

V.     CONCLUSION .................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adkins v. Facebook, Inc.*, No. C 18-05982 WHA,
  2019 U.S. Dist. LEXIS 206271, *691 (N.D. Cal. Nov. 26, 2019) ...................... 14

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ...............................................................................................9

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013) ...............................................................................17

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) .....................................................................................19

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...................................................................................9

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, at *25-26 (W.D. Ky. Aug. 23, 2010) ......14

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Me. 2013)..................................................................................14

*In re Linkedin User Priv. Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ..........................15

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1996)......................................................................17

*In re Nat'l Football League Players Concussion Inj. Litig.*,
  821 F.3d 410 (3d Cir. 2016) ....................................................................................8

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008)..................................................................12

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ............................................................................8, 20

ii

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ...................................................................13

*In re TJX Companies Retail Sec. Breach Litig.*,
246 F.R.D. 389 (D. Mass. 2007) ..........................................................................14

*In re Toys R Us-Delaware, Inc.--*
*Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014)...........................................................................16

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ..............................................................................13

*Metrow v. Liberty Mut. Managed Care LLC*, No. EDCV 16-01133 JGB (KKx),
2018 U.S. Dist. LEXIS 100835, at *34 (C.D. Cal. June 14, 2018).......................19

*Perez v. Rash Curtis & Assocs.*,
2020 U.S. Dist. LEXIS 68161, at *61-62 (N.D. Cal. April 17, 2020) ..................16

*Reyes v. Experian Info. Sols.*, No. 20-55909,
2021 U.S. App. LEXIS 10120, at *2 (9th Cir. Apr. 8, 2021)............................9, 11

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ..............................................................................10

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .............................................................................9, 10

*Sudunagunta v. NantKwest, Inc.*, No. CV 16-1947-MWF (JEMx),
2019 U.S. Dist. LEXIS 81337 at *18-19 (C.D. Cal. May 13, 2019) ....................19

*Tait v. BSH Home Appliances Corp.*, No. SACV10-0711 DOC (ANx),
2015 U.S. Dist. LEXIS 98546, at *34 (C.D. Cal. July 27, 2015) .........................11

*Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST,
2018 U.S. Dist. LEXIS 82801, at *10 (N.D. Cal. May 15, 2018)........................11

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .......................................................10, 11, 15, 17

iii

*Wing v. Asarco Inc.*,
 114 F.3d 986 (9th Cir. 1997) ....................................................................................15

*Wininger v. SI Mgmt. L.P.*,
 301 F.3d 1115 (9th Cir. 2002) ...................................................................................19

**Statutes**

Cal. Civ. Code § 1798.150(a) ......................................................................................6

**Other Authorities**

5 Newberg on Class Actions §§ 15:62, 15:65 (5th ed. 2018) ....................................11

iv

## I.  INTRODUCTION

Plaintiffs Noreen Pfeiffer, Jose Contreras, Susan Wright, Kelly Lancaster, Donna Horowitz, Annabelle Gonzales, and Debra Palmer ("Plaintiffs") through their undersigned counsel, respectfully move this Court for entry of an Order approving: (1) Class Counsel's requested attorneys' fees award of $650,000, or 25% of the Settlement Fund; (2) an expense reimbursement of $49,489.39; and (3) service awards to the Representative Plaintiffs of $1,500 each.

This action arises out of the alleged negligence by RadNet, Inc. ("RadNet" or "Defendant") in failing to safeguard the Personally Identifiable Information ("PII") of current and former employees and job applicants from unauthorized access and disclosure. Due to the alleged inadequate protection of the Class Members' PII, unauthorized third parties accessed one of RadNet's servers which permitted the exfiltration of certain information provided to RadNet with the expectation it would be kept private and secure. (The "Security Incident"). Plaintiffs allege that, as a result, their PII was listed for sale on the dark net, the purpose for which is to commit identity fraud or theft.

The parties attended a full day mediation session on April 21, 2021, before mediator Bennett G. Picker, Esq. in which the parties reached agreement on essential terms. Negotiations continued and the proposed resolution received preliminary approval by this Court on August 18, 2021 (ECF No. 63). The Settlement provides meaningful benefits to the Settlement Class Members ("Class Members").[1]

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement and Release dated June 23, 2021 (the "Settlement Agreement" or "SA"), filed on, June 24, 2021. ECF No. 61. The Settlement Class is composed of the following:
**Nationwide Class:**  The approximately 22,989 individuals residing in the United States who were identified for notification by RadNet that their personal information was or may have been implicated in the Security Incident.
**California Subclass:**  The 5,692 individuals residing in the State of California on July 18, 2020, who were identified for notification by RadNet that their personal information was or may have been implicated in the Security Incident.

1

The Settlement provides substantial monetary and other benefits to Class Members. Through Class Counsel's efforts, a Settlement Fund of $2,600,000 has been created which will pay for: (1) all payments of valid claims from Class Members; (2) the costs of claims administration; (3) attorneys' fees and costs and expenses to be determined by the Court; and (4) Class Representative service awards (the "Settlement"). See Settlement Agreement ("SA") (ECF No. 61, Ex. A), §§ 45, 51-56. Class Members will have the option of claiming a five-year comprehensive credit monitoring and identity theft restoration program, or in the alternative, a cash award of $125.00; will receive reimbursement for documented out of pocket expenses reasonably traceable to the Security Incident and compensation for time spent for up to 5 hours at $25.00 per hour. California Subclass members may receive an alternative cash payment of $75.00. *Id.* Each of the cash payment amounts are subject to pro rata adjustment based upon the number of valid claims asserted. *Id.* at § 70. If any funds remain in the Settlement Fund after distribution to Class Members, the balance will be distributed to a Non-Profit Residual Recipient to be selected by the Parties and approved by the Court. *Id.* at § 66.

As a further benefit to the Class Members, RadNet has agreed to implement and maintain substantial improvements in its security system for three years. These important security enhancements include:  1) implementation of endpoint security measures, including security applications, patching mechanisms, logging and alerting; 2) restricting remote access to and between RadNet servers that are used to store employee and job applicant PII, including appropriate geoblocking of malicious traffic and segmenting  systems through firewalls and access controls; 3) conduct a recurring vulnerability scanning and implement remediation program for RadNet servers used to store employee and job applicant PII; and 4) conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach. SA, § 71.

For their efforts in achieving these results, Class Counsel seek an award of attorneys' fees of 25% of the Settlement Fund, or $650,000, and reimbursement of their reasonable and necessary expenses totaling $49,489.39. Additionally, Class Counsel also seek a service award of $1,500 for each Representative Plaintiff in recognition of the time and effort they incurred and the risk they undertook in pursuing claims that benefited the Settlement Class. See SA, § 92.

As discussed below, the fee request is reasonable when considered under the applicable Ninth Circuit standards and is well within the normal range of awards in contingent-fee class actions in this Circuit. Under a lodestar calculation, the requested award of fees represents a negative multiplier of .66 applying Class Counsel's current and customary hourly rates. See Declaration of Gayle M. Blatt in Support of Plaintiffs' Motion for Approval of Attorneys' Fees Award, Expense Reimbursement, and Service Awards to Representative Plaintiffs ("Blatt Decl."), ¶ 53. The requested $1,500 service award for each Representative Plaintiff is objectively reasonable for this type of action and should be approved.

## II.      FACTUAL AND PROCEDURAL HISTORY

RadNet is a provider of diagnostic imaging services in outpatient imaging centers across the United States. RadNet is based Los Angeles with over 332 imaging centers around the country, and roughly 7,000 current employees. First Amended Consolidated Complaint ("FAC"), (ECF No. 34), ¶ 8.

On or around July 18, 2020, an unknown third-party gained unauthorized access to a RadNet server that was used to store certain employee data. *Id.* ¶¶ 24-27. The PII implicated in the Security Incident may have included names, Social Security numbers, driver's license numbers, and additional data such as dates of birth, addresses, and passport numbers, of current and former employees and job applicants. *Id.* ¶¶ 24-27.

The original class action complaint was filed on October 19, 2020 (Case No.

2:20-cv-09553). Two additional class action complaints were filed (Case No. 2:20-cv-10180 and Case No. 2:20-cv-10328) and transferred to this Court. On January 8, 2021, Plaintiffs filed their Consolidated Class Action Complaint (ECF No. 19), and RadNet moved to dismiss and to compel arbitration (ECF Nos. 26 and 32). Plaintiffs filed their FAC on February 28, 2021 (ECF No. 34). RadNet again moved to dismiss and compel arbitration (ECF Nos. 38 and 39). On March 19, 2021, Plaintiffs filed their Motion for Class Certification (ECF No. 41). On April 6, 2021, Plaintiffs filed oppositions to RadNet's Motions to Dismiss and to Compel Arbitration (ECF Nos. 44 and 45.)

On March 17, 2021, the Court appointed Gayle M. Blatt of the firm Casey Gerry Schenk Francavilla Blatt & Penfield, LLP as Interim Lead Class Counsel (ECF No. 40). Since then, Ms. Blatt, along with John Yanchunis of Morgan & Morgan Complex Litigation Group, William B. Federman of Federman & Sherwood, and M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corp., were appointed herein as Settlement Class Counsel (collectively "Class Counsel"). Blatt Decl. ¶ 4. In addition, Robert S. Green, of Green and Noblin, has contributed time and effort to this matter on behalf of Plaintiffs and the Class.

### A. Formal and Informal Discovery Leading to Mediation

Plaintiffs and RadNet (collectively, the "parties") engaged in both formal and informal discovery before engaging in mediation. Informally, the parties had ongoing written and oral communications to address the information and documents critical to a meaningful mediation, which RadNet provided. *Id.* ¶ 20. Plaintiffs also served RadNet with formal requests for admission, and for production of documents, and a Rule 30(b)(6) deposition notice. *Id.* ¶ 21. RadNet served Plaintiffs with requests for admission and for production of documents and interrogatories. *Id.* ¶ 22. Separately, Plaintiffs engaged a cybersecurity expert and an economist to opine on the impact of the breach, both of whom proved useful in supporting Plaintiffs' Motion for Class

Certification, and in informing Plaintiffs' Counsel in mediation. *Id.* ¶23. Plaintiffs' cybersecurity expert was deposed by RadNet. *Id.* ¶ 24. Plaintiffs' economist's deposition was set, but not taken, due to the parties' settlement. Id.

### B.   Settlement Negotiations

Prior to the mediation, Plaintiffs forwarded a detailed term sheet to RadNet, setting forth a proposed settlement structure to guide negotiations. Blatt Decl. ¶ 26. The parties then participated in two pre-mediation conferences with mediator Bennett G. Picker, who has extensive experience in mediating data breach matters. *Id.* ¶ 27. On April 21, 2021, after a full day of mediation with Mr. Picker and arm's-length negotiations, the parties agreed to a majority of the settlement terms. *Id.* ¶ 28. Arm's-length negotiations continued to address the remaining issues until agreement was reached on all issues that comprise the Settlement Agreement. *Id.* ¶ 29.

## III.   TERMS OF THE SETTLEMENT AGREEMENT

The provisionally certified Nationwide Settlement Class is comprised of 22,989 individuals, including 5,692 members of the California Subclass who were identified by RadNet for notification that their personal information was or may have been implicated in the Security Incident. All named Plaintiffs represent the Nationwide Class, and Plaintiffs Jose Contreras and Annabelle Gonzales, California residents at all relevant times, represent the California Subclass, defined as above.

### C.   Monetary, Injunctive and Other Settlement Benefits

#### 1. <u>Monetary Relief</u>

RadNet will create a non-reversionary Settlement Fund in the amount of $2,600,000.00 within forty-five (45) days of a preliminary approval order directing class notice. (ECF No. 61, Ex. A) § 45. Among other things, it will be used to provide the Settlement Class with the Monetary Settlement Benefits set forth below.

### a.    Cash Payment for Reimbursement of Out-of-Pocket Losses

For reimbursement of out-of-pocket losses, reimbursement of attested time, and alternative cash payments, Settlement Class Members may submit a claim for up to a maximum of $15,000.00. SA, § 51.

"Out-of-Pocket" losses are unreimbursed costs or expenditures incurred by a Class Member that are fairly traceable to the Security Incident. These may include unreimbursed costs, expenses, incurred as a result of identity theft or fraud, costs related to freezing or unfreezing credit reports, obtaining credit monitoring after July 18, 2020, and the Notice Deadline and other miscellaneous expenses.  SA, §§ 51-55.

Members of the California Subclass may seek relief under Cal. Civ. Code § 1798.150(a) for statutory damages in the amount of $75.00 or reimbursement of Out-of-Pocket Losses, whichever is greater, but not both. SA, § 56.

### b.    Cash Payment for Reimbursement of Time

Settlement Class Members may submit a claim for reimbursement of up to five (5) hours, at $25.00 per hour, for time spent addressing and remedying issues related to the Security Incident. SA, § 53.

### c.    Five Years of Identity Restoration Services

Settlement Class Members will be eligible to access Identity Guard's Identity Restoration Services through its Total Plan for a period of up to five (5) years from the Effective Date of the settlement. SA, § 61. Any Settlement Class Member who did not elect to enroll in Identity Guard's Total Plan, but who later has an identity event within the 5-year term, will be able enroll in Total Plan for the remainder of the 5-year term, and receive help to resolve the identity event issue. SA, § 61.

### d.    Five Years of Credit and Other Monitoring Services and Identity Theft Insurance

Each Settlement Class Member who submits a valid claim may elect to receive Identity Guard's Total Plan, which includes five years of three-bureau credit

monitoring and additional services such as (a) dark net monitoring and alerts to Members when their registered personal information such as Social Security, credit card, financial account, health insurance or passport numbers are found on the dark net; (b) bank account monitoring that alerts Members when new bank accounts are opened in their name, personal information and/or account holder is changed on an existing account; (c) high risk transaction monitoring that alerts Members when their identity is used for transactions such as payday loans, wire transfer, and account openings; and (d) safe browsing tools that provide that deliver proactive malware protection. The Plan also provides up to $1 million in identity theft insurance, and help with fraud/identity theft resolution, and other features. The retail value of this program of benefits is $1,000.00 per individual. SA, § 58.

### e.    Alternative Cash Payment

In lieu of Credit Monitoring Services with Identity Theft Insurance, Class Members can elect to receive a cash payment in the amount of $125.00. SA, § 60.

### f.    Pro Rata Distribution

In the event claims made exceed the total amount of the Settlement Fund, all claims will be reduced by a pro rata percentage across the categories; conversely, if the claims made do not exhaust the total amount of the Settlement Fund, all monetary Claims will be increased by a pro rata percentage until the Settlement Fund is fully exhausted. SA, § 70.

### 2. Injunctive Relief

RadNet, having engaged a third-party cybersecurity consultant, has agreed to adopt and implement certain business practices and remedial measures ("Business Practice Commitments") for a period of three years following the Effective Date of the Settlement, including the following for the PII of its former and current employees and job applicants: 1) endpoint protection, 2) restricted server access, 3) vulnerability scanning and 4) a cybersecurity training and awareness program.

### 3. Notice to Class and Administrative Costs

Payment of all Notice and Administration of the settlement will be paid from the Settlement Fund. SA, § 49. Notice has been timely disseminated and a reminder notification to the Class will be provided. SA, § 74.

### 4. Proposed Class Representative Service Awards

Plaintiffs have been active Class Representatives. They investigated their claims prior to retaining counsel, participated in numerous conversations with counsel, answered many questions about themselves, their experiences at RadNet and as a result of the Security Incident, reviewed the multiple complaints, prepared answers to written discovery, provided documents responsive to discovery; maintained regular communications with counsel to monitor the progress of the litigation and conferred with Counsel regarding the terms of the Settlement Agreement. SA, § 46.

### 5. Attorneys' Fees, Costs and Expenses

The parties addressed reasonable attorneys' fees, costs, and expenses only after they reached an agreement on the material terms of the settlement on behalf of the Class. Blatt Decl. ¶ 52; see *In re Nat'l Football League Players Concussion Inj. Litig*., 821 F.3d 410, 445 (3d Cir. 2016), as amended (May 2, 2016) (noting that deferring discussion of fees until after material settlement terms are agreed upon is a practice routinely approved by courts). After the negotiation, RadNet agreed not to oppose Class Counsel's request for a fee equal to 25% of the settlement fund, i.e., $650,000.00. *Id.*   Such a request is at the Ninth Circuit's 25% "benchmark" percentage for such award. See, e.g., *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 953 (9th Cir. 2015) (affirming 25% of total settlement fund fee award).

## IV.   ARGUMENT

### A.   The Requested Award is Fair and Reasonable by Ninth Circuit Standards

Under the "common fund" or "common benefit" doctrine, "a lawyer who

8

recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). See also Rule 23(h) ("[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement."). This rule is equitable in nature and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co*., 444 U.S. at 478. See also *Staton v. Boeing Co*., 327 F.3d 938, 967 (9th Cir. 2003) ("the common fund doctrine permits the court to award attorneys' fees from monetary payments that the prevailing party recovered").

Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011) (encouraging courts "to guard against an unreasonable result by cross-checking their calculations against a second method."). Where the percentage-of-recovery method is employed, it is well established that 25% of the common fund is the "benchmark" award for attorney's fees, and as the Ninth Circuit recently reiterated, any adjustment must be accompanied by sufficient explanation of why the benchmark is unreasonable. *Reyes v. Experian Info. Sols*., No. 20-55909, 2021 U.S. App. LEXIS 10120, at *2 (9th Cir. Apr. 8, 2021) (reversing and remanding the district court's order lowering the fee award from the requested 33% to 16.67% where a 35% fee award was deemed fair at preliminary approval by the prior presiding judge and there was insufficient justification to depart from the 25% benchmark). See also *Bluetooth Headset*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same). Under the lodestar method, a "lodestar figure is

9

calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton*, 327 F.3d at 965).

The Ninth Circuit has identified five factors that may inform the percentage of fund analysis: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-1050 (9th Cir. 2002). See also *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2019 U.S. Dist. LEXIS 69797, at *33 (N.D. Cal. Apr. 24, 2019); *In re Nexus 6P Prods. Liab. Litig.*, No. 17- cv-02185-BLF, 2019 U.S. Dist. LEXIS 197733, at *24 (N.D. Cal. Nov. 12, 2019).

Class Counsel respectfully submit that the requested fee award of 25% of the Settlement Fund, or $650,000, is reasonable under the percentage of recovery methodology, and have provided the Court with sufficient detail herein to perform a lodestar calculation crosscheck which further supports that finding. As set forth below, the work Class Counsel has done here renders this fee award reasonable and warranted.

**B.    The Award Request is Supported by the Percentage-of-Recovery Method**

The nature of this action warrants application of percentage-of-the-fund approach, the principal and "prevailing practice in the Ninth Circuit," to determine the reasonableness of Class Counsel's fee request. *Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRX, 2013 U.S. Dist. LEXIS 186262, at *3 (C.D. Cal. Dec. 23, 2013). As courts recognize, this method "is commonly used in the legal marketplace to determine attorneys' fees in contingency fee cases." *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 U.S. Dist. LEXIS 140137, at *83-84 (N.D. Cal. Aug. 17, 2018). Where the "benefit to the class is easily

10

quantified in common-fund settlements," district courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2018 U.S. Dist. LEXIS 82801, at *10 (N.D. Cal. May 15, 2018) (citing *In re Bluetooth*, 654 F.3d at 942).

Other considerations also command using the percentage approach here, including (1) replicating more accurately the manner that plaintiffs' lawyers practice outside of the class action context, (2) ensuring that class counsel's interests are more directly aligned with the interests of the class, (3) rewarding counsel for assuming the risks of litigating a matter, and (4) avoiding the trappings often associated with the lodestar method, such as encouraging counsel to bill time and to find reasons to do so. See *Tait v. BSH Home Appliances Corp.*, No. SACV10-0711 DOC (ANx), 2015 U.S. Dist. LEXIS 98546, at *34 (C.D. Cal. July 27, 2015); 5 Newberg on Class Actions §§ 15:62, 15:65 (5th ed. 2018).

Class Counsel seeks an award of 25%, a percentage value directly on par with the Ninth Circuit's well-established benchmark of 25% and previous awards in data breach cases. See *Reyes*, 2021 U.S. App. LEXIS 10120, at *2; *Vizcaino*, 290 F.3d at 1047 (affirming fee award based on 28% of $95 million cash settlement fund, and analyzing percentage-based fee awards between 1996 and 2001 in large common fund cases); *In re Anthem*, 2018 U.S. Dist. LEXIS 140137, at *86. Moreover, this Court held in its Preliminary Approval Order that, "[f]or the purposes of this motion [for preliminary approval], the Court finds that class counsel's request of fees is reasonable, as it falls within the range of possible approval." (ECF No. 63). As shown below, this percentage is reasonable under the relevant factors, and falls in line with the actual percentage fee awards in this District.

### 1. **The Results Achieved Here**

"The overall result and benefit to the class from the litigation is the most critical

11

factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). It is readily apparent that there were substantial risks to achieving a recovery had the Settlement not been reached at this point in the proceedings, especially considering the Defendant's pending motion to compel arbitration and dismiss or stay the action, and Plaintiffs' pending motion for class certification. Additionally, the scarcity of direct precedent certifying data breach cases as class actions created a substantial risk of achieving no recovery had the Settlement not been reached.

This Settlement affords the class relief which meets the potential impact of the Security Incident to Class Members—injunctive and monetary benefits carefully negotiated by Class Counsel to achieve protection and compensation for the alleged wrongs which form the basis of this action.

Class Members will have the opportunity to claim either $125.00 or the five-year comprehensive credit and other monitoring and identity restoration program, and reimbursement for out-of-pocket expenses and reimbursement for time spent up to $15,000. The 5,692 California Subclass members are entitled to an alternative cash payment of $75.00, with all cash benefits subject to proration depending on the number of claims.) SA, § 70. Based upon Class Counsel's experience in similar cases, it is likely that the Settlement Fund will be sufficient to pay all cash payment awards to Settlement Class Members who file valid claims. The non-monetary benefits serve to provide improved security for Class Members, whose PII remains in Defendant's possession. This is a fair and just outcome where the parties devoted financial resources and time to addressing resolution to benefit Class Members. Class Counsel believe this is an excellent result providing substantial benefit to the Settlement Class, thus supporting the requested fee award.

### 2. **The Risks and Nature of the Litigation**

"The law in data breach litigation remains uncertain and the applicable legal

12

principles have continued to evolve….” *In re Equifax*, 2020 U.S. Dist. LEXIS 118209, at *240. In this case, the parties briefed Defendant's motion to compel arbitration and dismiss or stay the action, and Plaintiffs filed their motion for class certification, but the parties settled the case before those motions were decided by the Court. Each of those issues presents a high-stakes endeavor, inherently fraught with risks and bearing enormous consequences, especially in the nascent legal landscape of data breach litigation. All cases, including this one, are subject to substantial risk. This case involves tens of thousands of individuals, and a complicated and technical factual overlay lodged against a motivated defendant. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And—as in any data breach, but especially one of this scope—establishing causation and damages on a class-wide basis is an unexplored legal frontier rife with uncertainty.

Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a complex class in an especially risky area. Historically, data breach cases have faced substantial hurdles in making it past the pleading stage. See, e.g., *Antman v. Uber Techs., Inc.*, No. 3:15-cv-01175, 2015 U.S. Dist. LEXIS 141945, at *29 (N.D. Cal. Oct. 19, 2015) (holding that the risk that plaintiff's identity could be stolen was insufficient to confer standing based on a data breach exposing plaintiff's name and driver's license number); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (loss of personal information and allegations of a heightened risk of identity theft, without more, calls standing into question); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases and noting that "every court to [analyze data breach cases] has ultimately dismissed under

Rule 12(b)(6) . . . or under Rule 56 following the submission of a motion for summary judgment"). *See also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, at *25-26 (W.D. Ky. Aug. 23, 2010) (approving a data breach settlement in part because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results").

Success at class certification has also been mostly nonexistent in these cases.[2] Even if this Court had granted in full Plaintiffs' motion for class certification, the inherent risks attendant to trying a data breach class action would have only magnified the difficult legal questions at issue here. *See, e.g.*, *In re Anthem*, 2018 U.S. Dist. LEXIS 140137, at *107 ("[C]lass certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on."); *In re Equifax*, 2020 U.S. Dist. LEXIS 118209, at *191. Although Plaintiffs believe they would have prevailed in this action, a defense verdict was possible. By settling and paying Class Members now, practical remedies that have been absent become imminently available. Even if Plaintiffs achieved a successful judgment, relief to Class Members could be forestalled for years following the exhaustion of appeals.

### 3. <u>The Skill Required to Prosecute this Action Effectively</u>

Class Counsel's skill and experience in complex class action litigation also favor the requested fee award here. *See*, Blatt Decl. and Exhs. A-D. Class Counsel's fee request is commensurate with that experience, which they were able to leverage to procure the settlement. The skill demonstrated by Class Counsel in developing the Complaints, opposing Defendant's motions to compel arbitration and dismiss the

---

[2]    *See Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2019 U.S. Dist. LEXIS 206271, *691 (N.D. Cal. Nov. 26, 2019) (granting motion to certify injunctive-only class, but denying motion to certify damages and issues classes in data breach class action); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach action); *In re TJX Companies Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (same). *Compare In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 U.S. Dist. LEXIS 71965, at *40 (M.D. Fla. Apr. 14, 2021) ("The Court acknowledges it may be the first to certify a Rule 23(b)(3) class involving individual consumers complaining of a data breach involving payment cards….")

14

action, moving for class certification, mediating the case and settling the action further support the fees requested. *See Vizcaino*, 290 F.3d at 1050, n.5.

Class Counsel were also equal to the experience and skill of the lawyers representing RadNet, a factor to be considered here. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx) 2014 U.S. Dist. LEXIS 184548, at *72 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)). Defendant was represented in this case by a national, highly respected law firm (Perkins Coie LLP) with significant resources and substantial experience defending consumer class actions. This factor, therefore, weighs in favor of the requested fee award.

### 4.  Awards in Similar Cases

The requested fee percentage of 25% is reasonable when compared to reported data breach class action fee orders within the Ninth Circuit. *See In re Anthem*, 2018 U.S. Dist. LEXIS 140137, at *119-20 (awarding $31.05 million in attorneys' fees or "27% [of the] $115 million Settlement Fund."); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) (awarding attorneys' fees of 25% of the settlement fund, or $312,500).

### C.      The Fee Request Is Reasonable Under the Lodestar Cross-Check

Where the use of lodestar method is used as a cross-check, it can be performed with a less exhaustive review and analysis of hours. *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 U.S. Dist. LEXIS 169764, at *52 (N.D. Cal. Sept. 21, 2018) (the cross-check does not require "mathematical precision nor bean-counting") (citation omitted); *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014) ("In cases where courts apply the percentage method to calculate fees, they should use a

15

rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award."). Courts apply similar factors to those under the percentage of recovery method to support awards under the lodestar calculation. *Perez v. Rash Curtis & Assocs.*, 2020 U.S. Dist. LEXIS 68161, at *61-62 (N.D. Cal. April 17, 2020) (citations and marks omitted) (factors include: "(i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment.").

As set forth above, each of these factors weigh heavily in favor of the conclusion that the fee request of $650,000 (below lodestar) is reasonable, particularly given that Class Counsel collectively expended over 1447.20 hours in prosecuting this action with a total lodestar of $981,231.40, resulting in a negative .66 multiplier when applying Class Counsel's usual and customary rates. See Blatt Decl. ¶¶ 48-49, 53; Declaration of John Yanchunis ("Ex. A") ¶ 16; Declaration of William B. Federman ("Ex. B") ¶ 8; Declaration of M. Anderson Berry ("Ex. C") ¶ 18; and Declaration of Robert S. Green ("Ex. D") ¶ 3. *See also In e Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400 (CM), 2010 U.S. Dist. LEXIS 119702, at *77 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request.").[3]

Moreover, in assessing fee applications, the reasonable hourly rates are calculated according to the prevailing market rates in the relevant legal community. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). Here, the hourly

---

[3]    Indeed, as the Ninth Circuit has recognized, attorneys in common fund cases are frequently awarded a multiple of their lodestar, which rewards them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051. It is common for courts to enhance the lodestar in complex litigation by multipliers between 3 and 4.5, and many courts have awarded higher multipliers. *See, e.g., Id.* at 1051 n.6 (finding multiples ranged as high as 19.6, but most from 1 to 4).

16

rates for Class Counsel are reasonable for the community and comparable to similar services by lawyers of reasonably comparable skill, experience, and reputation. See *In re Equifax*, 2020 U.S. Dist. LEXIS 118209, *259 (finding as reasonable attorneys rates ranging up to $935 per hour). Indeed, Class Counsel have been approved at the billing rates they seek in this case. *See, e.g., DeFrees v. Kirkland*, No. CV 11-4272 GAF (SPx), 2014 U.S. Dist. LEXIS 157320, at *2 (C.D. Cal. Nov. 4, 2014) ("the Court finds the fees and costs appear to be reasonable"); *Carter v. Hot Topic, Inc.*, No. 2:13-cv-04153-SJO (JCx), slip op., ECF No. 9 (C.D. Cal. Apr. 13, 2016) (awarding requested fees).

The hours expended are also reasonable. To date, Class Counsel have expended over 1,400 hours litigating this matter to the benefit of the Class. Blatt Decl., ¶ 45. This time included investigating and bringing this case upon the announcement of the Security Incident; speaking with and interviewing class members and the named plaintiffs; preparing and amending complaints; conducting formal and informal discovery; preparing for and attending mediation; opposing motions to compel arbitration and to dismiss or stay the action; moving for class certification; obtaining post-mediation information; negotiating a complex Settlement Agreement; soliciting bids from claims administrators; moving for and successfully obtaining preliminary approval; working in concert with the Settlement Administrator; monitoring the Notice Program and claims administration; and preparing this Motion; and attending a scheduling conference in person. Blatt Decl., ¶ 50.

Finally, Class Counsel took this case on a pure contingency basis. The attorneys working on the case have foregone the ability to devote time to other cases and faced a substantial risk that the litigation would yield no or very little recovery and leave them uncompensated for their time and out-of-pocket expenses. Given the fact that few contested classes have been certified in data breach class actions, there

17

can be no question that the risk of nonpayment was substantial. While Plaintiffs may have succeeded at the trial court level in defeating Defendant's motion to compel and to dismiss, defeating a putative motion for summary judgment, and certifying a damages-based class, the passage of time and delay in delivering benefits to Class Members would have been protracted, and any appellate processes would have further prolonged the delivery of those benefits. No stage of the proceedings is guaranteed, and with the highlighted hurdles of overcoming the motion to dismiss and achieving contested certification in this case, it is clear that Class Members may not have recovered any monetary benefits, and the Class Members' PII in RadNet's possession may have continued to be at risk without this litigation.

In addition, Class Counsel's responsibility for this case is far from over. Class Counsel necessarily must continue to work with the Settlement Administrator, review and respond to any objections, move for final approval, handle any appeals, and oversee the final administration of benefits to Class Members. Given the foregoing, Class Counsel's fee request of $650,000 is eminently reasonable.

### D.   Class Counsel's Reasonable Expenses Should Be Reimbursed

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citation omitted). Such expense awards comport with the notion that the district court may "spread the costs of the litigation among the recipients of the common benefit." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002).

Class Counsel have incurred expenses in the prosecution of this Action in the total amount of $49,489.39. Blatt Decl., ¶ 51. Class Counsel provide a summary of the unreimbursed expenses necessarily incurred by counsel in this case. Blatt Decl., ¶ 57; Ex. A, ¶18; Ex. B, ¶12; Ex. C, ¶20; Ex. D, ¶4. For example, Class Counsel seek

reimbursement for filing fees, service of process, legal research, travel, photocopying and mediation fees. These are standard expenses incurred in prosecuting a civil lawsuit and are the type of expenses typically billed by attorneys to paying clients in the marketplace. As with the lodestar, all expenses were carefully scrutinized. *Id.*

"Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *Metrow v. Liberty Mut. Managed Care LLC*, No. EDCV 16-01133 JGB (KKx), 2018 U.S. Dist. LEXIS 100835, at *34 (C.D. Cal. June 14, 2018) (awarding expenses for "travel, transcripts and expert witness fees") (citation omitted).  Such expenses are in line with those approved by courts in this District because they are the type "that would typically be billed to paying clients in non-contingency matters." *Sudunagunta v. NantKwest, Inc.*, No. CV 16-1947-MWF (JEMx), 2019 U.S. Dist. LEXIS 81337 at *18-19 (C.D. Cal. May 13, 2019) (finding recovery of expenses relating "to necessary travel, filing and service fees, document storage and maintenance fees, printing fees, and other similar costs" appropriate from the settlement fund) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). The request for litigation costs and expenses is similarly reasonable here.

**E.     Request for Plaintiff Service Awards**

Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d at 943 (internal quotation marks and citation omitted). Service awards of as much as $5,000 for each plaintiff have been found "presumptively reasonable" by this Court, and throughout the Ninth Circuit. *See e.g., Pauley v. Cf Entm't*, No. 2:13-CV-08011-RGK-CW, 2020 U.S. Dist. LEXIS 187614, at *9 (C.D. Cal. July 23, 2020) (Klausner, J.). This Court already held in its Preliminary Approval Order that a service award of $1,500 for

each plaintiff "appears to be fair." ECF No. 63.

The Court should approve modest service awards here of $1,500 to each of the seven Representative Plaintiffs. As described in their declarations, the Representative Plaintiffs spent considerable time throughout the litigation fulfilling their responsibilities as plaintiffs and class representatives. See Declarations of Plaintiffs Noreen Pfeiffer ("Ex. E") ¶¶ 9-12, Susan Wright ("Ex. F") ¶¶ 9-12, Jose Contreras ("Ex. G") ¶¶ 9-12, Kelly Lancaster ("Ex. H") ¶¶ 8-11, Annabelle Gonzales ("Ex. I") ¶¶ 8-11, Donna Horowitz ("Ex. J") ¶¶ 7-10, and Debra Palmer ("Ex. K") ¶¶ 7-10. The amounts requested here are below this Court's prior application of the Ninth Circuit's benchmark. *See Pauley*, 2020 U.S. Dist. LEXIS 187614, at *11 (finding $5,000 to each class representative an appropriate award for their role in the litigation where the gross settlement amount was $275,000) (citing *In re Online DVD-Rental*, 779 F.3d at 947 (finding $5,000 reasonable)).

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant motion for entry of an Order approving Class Counsel's request for: (i) an attorneys' fees award in the amount of 25% of the Settlement Fund, or $650,000; (ii) reimbursement of $49,489.39 in expenses; and (iii) payment of incentive awards of $1,500 to each of the Representative Plaintiffs.

Dated:  October 14, 2021       Respectfully submitted,

CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD, LLP

By:    /s/ Gayle M. Blatt
GAYLE M. BLATT
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
gmb@cglaw.com

John Yanchunis (Admitted *Pro Hac Vice*)
Ryan McGee (Admitted *Pro Hac Vice*)
MORGAN & MORGAN

20

COMPLEX LITIGATION GROUP
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Tel: (813) 559-4908
jyanchunis@ ForThePeople.com
rmcgee@ForThePeople.com

M. Anderson Berry (SBN 262879)
CLAYEO C. ARNOLD,
A PROFESSIONAL LAW CORP.
865 Howe Avenue
Sacramento, CA 95825
Tel: (916) 777-7777
ABerry@justice4you.com

William B. Federman (Admitted *Pro Hac Vice*)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
-and-
212 W. Spring Valley Road
Richardson, TX 75081
Tel: (405) 235-1560
wbf@federmanlaw.com

20-CV-09553 (RGK)(SK)
MPA ISO MOTION FOR ATTORNEYS' FEES